.Clyde N. VLASS, Plaintiff,

v.

RAYTHEON EMPLOYEES DISABILITY TRUST, Raytheon Company, and Metropolitan Life Insurance Company, Defendants.

No. Civ.A. .99–10146–JLT.

United States District Court,
D. Massachusetts.

May 2, 2000.

Daniel C. Finbury, Finbury & Sullivaan, Haverhill, MA, for Clyde N. Vlass, plaintiff.

James F. Kavanaugh, Jr., Stephen S. Churchill, Conn, Kavanaugh, Rosenthal, Peisch & Ford, Boston, MA, for Raytheon Employees Disability Trust, defendant.

### MEMORANDUM

TAURO, District Judge.

Defendants move for summary judgment on grounds that MetLife's determination that Plaintiff was not "totally disabled" is supported by "substantial evidence." For reasons set forth below, the motion is DENIED.

### I.

Plaintiff, Clyde Vlass, began working for Defendant, Raytheon Company ("Raytheon"), in October 1985 as a "unit person." In February 1995, Vlass was diagnosed with diabetic neuropathy and secondary chronic pain. In March 1995, he was deemed "fully disabled," and began receiving disability benefits under Raytheon's employee benefits plan (the "Plan"). *See* Claim File of Metropolitan Life Insurance Company ("Claim File"), MET095–119. The Plan provides that benefits are payable during the first eighteen months of disability to an employee who is "fully disabled," i.e., an employee who "cannot perform the essential elements and substantially all of the duties of his or her job at Raytheon

even with a reasonable accommodation." *Id.* at MET098. Benefits thereafter are payable only to an employee who is "totally disabled," i.e., an employee who "cannot do any other job for which he or she is fit by education, training or experience." *Id.* at MET100. In September 1996, Defendant Metropolitan Life Insurance Company ("MetLife"), the plan claims administrator, determined that Vlass was not "totally disabled," and terminated his benefits.

## II.

The parties agree that ERISA governs Plaintiff's claims, that MetLife had discretionary authority to determine whether Plaintiff was eligible for disability benefits under the Plan, and that the court must determine whether MetLife's decision that Plaintiff was not entitled to such benefits is supported by "substantial evidence." "Substantial evidence" means "evidence reasonably sufficient to support a conclusion." *Doyle v. Paul Revere Life Ins. Co.,* 144 F.3d 181, 184 (1st Cir.1998).

Defendants assert that four categories of evidence support MetLife's determination denying Plaintiff further disability benefits: (1) the August 7, 1996 physician's report of Dr. Elizabeth Buchanan, M.D., Plaintiff's family practitioner; (2) the May 24, 1996 physician's report of Dr. Robert Levine, M.D., the endocrinologist who conducted an "independent medical examination" of Plaintiff; (3) the August 28, 1996 vocational assessment report of Crawford & Co.; and (4) the November 6, 1996 surveillance report of Absolute Investigations, Inc. This court disagrees.

A fair reading of the cited reports, in conjunction with additional information in Plaintiff's case file, causes this court to conclude that MetLife's determination that Plaintiff was not "totally disabled" was unreasonable. At a minimum, the evidence establishes that Plaintiff was incapable of performing "his prior and all occupations," Claim File, MET072 (March 4, 1996 letter of Dr. Richard Levy, M.D.), at the

time MetLife terminated his benefits. Moreover, the reports in the file suggest that Plaintiff may be "permanently" disabled from all present and future employment.

## A.

In supporting MetLife's termination of Plaintiff's benefits under the Plan, Defendant relies on selected medical observations from the August 7, 1996 physician's report of Dr. Elizabeth Buchanan and the May 24, 1996 physician's report of Dr. Robert Levine. Defendants note that Dr. Buchanan's report indicates that Plaintiff, with some restrictions, can work five to six hours per day, and can perform, to varying degrees and for varying lengths of time, all physical tasks except lifting or carrying more than fifty pounds. Defendants observe that Dr. Levine's report opines that Plaintiff suffers "no signs of motor dysfunction" or limitations on his ability to sit, change position, reach, pull, push, twist, or operate a truck/dolly/small vehicle, among other activities. Defendants contend, therefore, that Dr. Buchanan and Dr. Levine concur that Plaintiff is not "totally disabled" under the Plan.

Read in full, however, the reports of Dr. Buchanan and Dr. Levine actually undermine Defendants' position. Dr. Buchanan's August 7th report, in fact, is not an independent, written report at all, but instead Defendant's block form which Dr. Buchanan completed at its request. *See* Claim File, MET087. Additional documentation of Dr. Buchanan's medical examination of Plaintiff is more instructive as to her opinion of Plaintiff's functional capacity. Indeed, in a September 11, 1995 report to the case management specialist at MetLife, Dr. Buchanan opines that Plaintiff is "currently totally disabled." *Id.* at MET481. In a July 8, 1996 report to Raytheon, she adds: "Given the intensity of his description, [Plaintiff] certainly sounds fully disabled...." *Id.* at MET386.

Dr. Levine's physician's report similarly is unsupportive of Defendants' position when read in totem. Recognizing Plaintiff's complaints of "severe" and "unrelenting pain," and an "inability to do work or concentrate due to this pain," the report states that Plaintiff exhibits "characteristic findings for a painful diabetic radiculopathy" that, while typically lasting six to eighteen months, may last longer. *Id.* at MET089. Dr. Levine thus concludes: "I would hesitate to recommend *permanent* disability.... If [Plaintiff's] degree of pain is felt to prohibit his employment at the present time, I would recommend continuation of temporary disability, with the hope and expectation that ultimately this pain syndrome should resolve." *Id.* at MET094. Fairly read, Dr. Levine's report indicates his opinion that Plaintiff, as of May 24, 1996, was "totally," if not "permanently," disabled.

In addition to Dr. Buchanan and Dr. Levine, Dr. Richard Levy, a neurologist, also examined and treated Plaintiff for "painful diabetic neuropathy." In nine reports contained in Plaintiff's case file, Dr. Levy unambiguously states his opinion of Plaintiff's condition, which his March 4, 1996 report to Raytheon best summarizes:

> I am writing with reference to your letter of 02/27/96 concerning Clyde Vlass. Mr. Vlass has a painful diabetic neuropathy. It is predominantly in the thoracoabdominal region. He suffers from chronic pain, as is documented in my office notes. The neuropathy and consequent pain interfere with his ability to function at work. He has to take pain medication which potentially could interfere with his cognitive function. Likewise, his pain interferes with his concentrating abilities. *By virtue of his pain and usage of medication, it is my opinion that he is disabled from his prior and all occupations. I anticipate that this will be permanent.* (emphasis added).

MetLife's reliance solely on extracted medical observations, taken out of the context of the medical opinions of Dr. Buchanan and Dr. Levine, and in disregard of the express, repeated opinion of Dr. Levy, was unreasonable. Such unduly selective consideration of medical evidence does not amount to "substantial evidence." *See generally Adie v. Commissioner, Social Security Admin.*, 941 F.Supp. 261, 267–269 (D.N.H.1996) (applying substantial evidence test in social security disability context). The medical reports of Dr. Buchanan, Dr. Levine, and particularly Dr. Levy, when coupled with Plaintiff's subjective assertions of chronic, documented, unrelenting pain, support the only reasonable conclusion that Plaintiff, at least at the time MetLife terminated his benefits, was "totally disabled" within the terms of the Plan.

### B.

Defendants also proffer the August 28, 1996 vocational assessment report of Crawford & Co., and the November 6, 1996 surveillance report of Absolute Investigations, Inc., as "substantial evidence" supporting MetLife's determination to terminate Plaintiff's disability benefits under the Plan. Given Defendants' mischaracterizations of the medical reports of Dr. Buchanan and Dr. Levine, the vocational assessment report and surveillance report carry little independent merit.

Defendants stress that the surveillance report notes Plaintiff engaging in a variety of physical activities, including driving, carrying trash, reaching over his head to decorate his home, mowing his lawn, lifting his lawnmower, and carrying a large piece of lumber with the assistance of another woman. None of these activities, however, conflict with the already examined medical reports of Dr. Buchanan, Dr. Levine, or Dr. Levy. In her May 1, 1996 correspondence with Plaintiff, Dr. Buchanan recommends that he regularly engage in physical activity to help control his diabetic condition. *See id.* at MET238. Dr. Levy also reviewed a videotape of the surveillance, and concluded as follows:

Obviously, from a physical standpoint, [Plaintiff] is capable of doing things. That wasn't the issue. He is totally disabled from his occupation due to diabetic neuropathy and pain associated with it. Not only does the neuropathy interfere with his ability to function in his occupation, but the pain medication potentially can interfere with his cognitive processes.... It is, therefore, my opinion that the patient remains permanently disabled and is not a good candidate for rehabilitation.

Claim File, MET084. Plaintiff asserts that he suffers severe pain, for which he takes a second dose of medication, following physical exertion of this kind. *See* Plaintiff's Affidavit, ¶ 3. The surveillance report's observation that Plaintiff spent the vast majority of the first day of observation inactive supports Plaintiff's further contention that his physical exercises are rare. *See id.*

The vocational assessment report of Crawford & Co. is similarly unpersuasive. The report concludes that Plaintiff, while unable to perform his job at Raytheon, "possesses good transferable skills to perform skilled employment that is within his residual functional capacity." *Id.* at MET333. But a vocational expert's opinion may be relevant to a determination of disability only if the bases for the opinion correspond to conclusions that are supported by medical evidence. *See generally Arocho v. Secretary of Health and Human Serv.,* 670 F.2d 374, 375 (1st Cir.1982). The Crawford & Co. report improperly relies on mischaracterizations of the medical opinions of Dr. Buchanan, Dr. Levine, and Dr. Levy.

Most striking, the report wholly dismisses Dr. Levy's opinion that Plaintiff is "permanently" disabled on grounds that Dr. Levy "provides no levels of functional capacity." *Id.* at MET334. Yet, Dr. Levy's reports plainly state, time and again, that Plaintiff "remains permanently disabled and is not a good candidate for rehabilitation." *Id.* at MET084. In characterizing Dr. Levine's findings, the report predominantly relies on the statement that "the

natural history of diabetic radiculopathy is to show sudden resolution usually six to eighteen months following diagnosis." *Id.* at MET334. The report then disregards Dr. Levine's opinion that, this general rule notwithstanding, Plaintiff continues to suffer from "painful diabetic radiculopathy." *Id.* at MET094. As to Dr. Buchanan's medical opinion, the Crawford & Co. vocational assessment report relies solely on the block form Dr. Buchanan completed at Defendants' request, wholly ignoring Dr. Buchanan's written reports of July 8, 1996, March 25, 1996, and September 11, 1995, in which she substantively states more than once:

I think the actual physical requirements of the job are not the question. His strength is adequate. The problem is in his ability to maintain adequate concentration and endurance to work at a regular job, and I think with his pain, as noted above, this is not reasonable. *I feel he is currently totally disabled ....* (emphasis added).

Claim File, MET481.

In sum, the vocational assessment report of Crawford & Co., the surveillance report of Absolute Investigations, Inc., and the relevant medical evidence do not add up "substantial evidence" justifying MetLife's termination of Plaintiff's benefits. The medical reports of Dr. Buchanan, Dr. Levine, and Dr. Levy, in addition to Plaintiff's subjective assertions of chronic pain, conversely establish the only reasonable conclusion that Plaintiff is "totally disabled" within the terms of the Plan.

### III.

For the foregoing reasons, the court concludes that MetLife's determination terminating Plaintiff's benefits is not supported by "substantial evidence." Defendants' motion for summary judgment accordingly is DENIED.

AN ORDER SHALL ISSUE.